# United States Court of Federal Claims

No. 16-1704 C
(Filed Under Seal: October 31, 2017)
(Reissued: November 16, 2017)[*]

_____

**DYNCORP INTERNATIONAL, LLC,**

        *Plaintiff,*

v.

**UNITED STATES OF AMERICA,**

        *Defendant,*

**and**

**AAR AIRLIFT GROUP, INC.,**

        *Defendant-Intervenor.*
_____

Motion for Judgment on Administrative Record, RCFC 56; United States Department of State; Bureau for International Narcotics and Law Enforcement Affairs, Office of Aviation; Aviation Support Services; Post-Award Bid Protest; Disparate Treatment; Procurement Violations; Limited Confidence for Past Performance; Incumbent; Competition in Contracting Act; Corrective Action; Profit Margin Analysis

    *David M. Nadler, Esquire,* Blank Rome LLP (DC), for plaintiff.

    *Douglas G. Edelschick, Esquire*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

    *Joel Singer, Esquire*, Sidley Austin, LLP (DC), for defendant-intervenor.

## OPINION AND ORDER

**Hodges,** *Senior Judge*.

    DynCorp International, LLC filed its complaint in this court to enjoin and set-aside the United States Department of State's award of a $10 billion follow-on contract, Solicitation No. SAQMMA14R0319, for global law enforcement and counter-narcotics operations to AAR Airlift Group, Inc. Plaintiff DynCorp and intervenor AAR were the only bidders in this procurement. Before the court are plaintiff's motion for judgment on the administrative record and a petition for injunctive relief; plaintiff's amended motion for judgment on the administrative record; defendant's and intervenor's cross-motions for judgment on the administrative record are also pending.

_____

[*]We issued this Opinion under seal on October 31, 2017, and invited counsel to propose redactions prior to its publication. The parties have agreed on suggested redactions and so advised the court. The October 31 Opinion is hereby reissued for publication, unsealed, with minor alterations to account for the redactions.

DynCorp's incumbent contract has been extended twice, currently to October 31, 2017. For the reasons discussed below, we must deny plaintiff's motion for judgment on the administrative record, deny plaintiff's amended motion for judgment on the administrative record, and grant the cross-motions filed by defendant and intervenor.

## PROCEDURAL HISTORY

Plaintiff filed its post-award bid protest Complaint and a motion for a preliminary injunction in December 2016. Because defendant had previously agreed to a limited stay on performance of the contract awarded to intervenor until October 31, 2017, this court denied that motion as moot. In early January 2017, pursuant to defendant's first motion for voluntary remand, the court remanded this case to the Department of State for thirty days to allow the Contracting Officer to reconsider certain matters under the Procurement Integrity Act (PIA) in light of a newly available memorandum from the Office of the Inspector General. On February 22, defendant filed the Contracting Officer's Remand Decision finding that no PIA violation had occurred.

Plaintiff filed a motion for judgment on the administrative record on April 17. In light of arguments plaintiff raised in this motion, defendant filed a second motion for remand on May 1, requesting thirty days to allow the Department of State to reconsider its price reasonableness analysis. The court granted this motion. Defendant filed its remand record in June and the parties agreed that more litigation would be necessary to resolve the case; plaintiff would file an amended motion for judgment.

Plaintiff filed an amended motion for judgment on the administrative record on July 7. Three weeks later, defendant and intervenor filed cross-motions for judgment on the administrative record. We held oral argument on October 6, 2017 in Washington, DC.

## STANDARD OF REVIEW

When considering cross-motions for judgment on the administrative record, the court "asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." Court of Federal Claims Rule 52.1(c). *See Pmtech, Inc. v. United States*, 95 Fed. Cl. 330, 340 (2010) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356–57 (Fed. Cir. 2005)).

The standards for challenging an agency's procurement decision are taken from the Administrative Procedure Act at 5 U.S.C. 706(2)(A): "[T]o successfully challenge an agency's procurement decision, a plaintiff must show that the agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See IBM Corp. v. United States*, 119 Fed. Cl. 145 (2014).

An agency decision would be arbitrary or capricious if the agency relied on factors that Congress did not intend for it to consider, failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or to agency expertise. *Motor Vehicle Mfr. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Plaintiff's heavy burden is to demonstrate that the contract award had no rational basis. *Ft. Carson Support Servs. v. United States*, 71 Fed. Cl. 571, 586 (2006). This court then determines whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion. *IBM Corp.*, 119 Fed. Cl. at 154 (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 at 1332–33 (Fed. Cir. 2001)).

Plaintiff's burden is exacerbated by the fact that this is a best value procurement. Determining which offer affords the best value to the Government necessarily calls for even broader agency discretion, especially when the contracting officer has provided supporting rationale for his decision. Such an award involves consideration of multiple factors to determine best value, and not cost alone. *Tiber Creek Consulting, Inc. v. United States*, 129 Fed. Cl. 409, 415 (2016) (citing *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004)).

This court reviews the contracting officer's decision to determine whether it has a rational basis. We do not reweigh the evidence, but grant to the CO wide deference unless plaintiff can demonstrate that the decision lacked a rational basis.

## BACKGROUND & ARGUMENTS

### I. Worldwide Aviation Support Services (WASS) Program

Plaintiff Dyncorp is the incumbent on the contract preceding the new Solicitation No. SAQMMA14R0319 at issue in this case. The new Solicitation calls for a single-award indefinite-delivery, indefinite-quantity contract with a maximum value of $10 billion over eleven years. Both contracts call for the contractors to provide flight operations, maintenance, and logistical support for the Worldwide Aviation Support Services (WASS) Program. The Program supports global law enforcement and counter-narcotic operations by the United States Department of State, Bureau for International Narcotics and Law Enforcement Affairs, Office of Aviation.

The Department of State divided WASS into three contracts: Aviation Support Services, IT Services, and Program Support Services. The contract award at issue in this Protest is for one of these three contracts, the Aviation Support Services contract. Awards have already been made for the other two contracts.

Plaintiff asserts that the Department of State restructured the WASS program in its new Solicitation. Under the predecessor WASS contract, DynCorp and its subcontractors performed all contract functions. Conversely, the Aviation Services Contractor's Solicitation requires the contractor to execute Associate Contractor Agreements with the other two associate contractors to allow coordination and information-sharing among the contractors.

### A. Management Information Systems (MIS)

The Solicitation provided that the Department of State would conduct its evaluation using seven enumerated Factors and corresponding Sub-Factors, listed in descending order of importance.[1] Solicitation § M.12. The most heavily-weighted Factor is Management & Administration. The Contracting Officer's evaluation of the bidders' proposals for Sub-Factor B, Management Information System (MIS), is central to this case. In particular, an issue causing much confusion was whether the Aviation Services Contractor or the IT Associate Contractor would have responsibility for a newly implemented MIS after transition from the old MIS was complete.

### B. Department of State's First Evaluative Decision

Plaintiff alleges that defendant misled plaintiff to take a certain approach that was later the basis for defendant's disqualification of plaintiff's proposal. Plaintiff relied upon certain language in creating its final proposal to deliver responsibility for the MIS to the IT Associate Contractor.

In the first round of proposal evaluations, DynCorp received ratings of "Unacceptable" under each of the four Technical Factors, as well as their corresponding Sub-Factors, and received a rating of Limited Confidence for Past Performance. DynCorp's price was deemed "not awardable." With the exclusion of DynCorp from the competitive range, AAR became the presumptive awardee.

DynCorp filed a Protest at the Government Accountability Office in February 2015 and a Supplemental Protest on March 16, alleging additional errors in the State Department's technical, past performance, and price evaluations of both offerors. On March 18, the Department of State notified GAO of its intent to take corrective action in response to the Protests and advised that the scope of its corrective action would include "reconsideration of each Offeror's initial proposal (excluding AAR proposal revisions or responses to ENs) to include the approach to staffing, re-consideration and validation of assigned strengths, weaknesses and deficiencies, and re-consideration of past performance." Complaint ¶ 31.

---

[1] The seven Factors are: (1) Management & Administration; (2) Operations; (3) Maintenance; (4) Logistics; (5) Small Business Plan; (6) Past Performance; and (7) Price. Factors 1-4 are considered Technical Factors.

After the Department of State took corrective action in response to DynCorp's GAO Protest, it reinstated DynCorp into the competitive range and conducted discussions with DynCorp. Complaint ¶ 42. During those discussions, DynCorp responded to a total of 158 discussion questions. *Id.* DynCorp submitted its first proposal revision on November 16, 2015, following the first tranche of sixty discussion questions. *Id.* DynCorp then submitted another proposal revision responding to the remaining ninety-eight discussion questions on March 7, 2016. *Id.* DynCorp submitted its Final Proposal Revision on May 4, 2016. *Id.*

### C. Department of State's Second Evaluative Decision

Plaintiff asserts that defendant's discussion questions in the second round of evaluations following issuance of Amendment 5 were misleading. The court finds that defendant's communications with both offerors were not misleading because the contracting officer sufficiently identified proposal weaknesses in these discussions.

In May 2016, the Department of State empaneled a four-member technical evaluation team (TET) of industry experts to document its consensus findings regarding plaintiff's and intervenor's proposals. Tab 9, AR 6649–6705; Tab 17, AR 10031–75. The TET rated DynCorp's proposal "unacceptable" overall because it received a deficiency relating for proposing that "the Associate IT Contractor will establish and maintain the test environment for the Offeror's new MIS." Complaint ¶ 43; Tab 9, AR 6667. With respect to Factor 1, Management and Administration, the TET assigned one deficiency, three significant weaknesses, and eight weaknesses to DynCorp's solution for Sub-Factor 1-B.[2] DynCorp received the following ratings for the four technical Factors: 1 (Unacceptable); 2 (Superior); 3 (Marginal); 4 (Acceptable). *Id.* AAR received an Overall Proposal Rating of "Superior" and the following ratings for the four technical Factors: 1 (Superior); 2 (Superior); 3 (Acceptable); 4 (Superior). Complaint ¶ 45. DynCorp's final evaluated price was approximately $100 million lower than AAR's bid. Complaint ¶ 47.

Because the Department of State rated DynCorp as Unacceptable for Factor 1, it deemed DynCorp "ineligible for award" and did not conduct a cost-technical tradeoff. Complaint ¶ 48. DynCorp asserts that the Department of State's sole basis for its Unacceptable rating under Factor 1 was the Contracting Officer's determination to assign a deficiency and three significant weaknesses for DynCorp's Management Information System ("MIS") solution under Sub-Factor 1-B. *Id.*

---

[2] "Evaluators considered a *deficiency* to be a material failure of a proposal to meet a Government requirement or a combination of significant weaknesses in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level." Tab 9, AR 6650 (emphasis in original); Tab 17, AR 10032 (emphasis in original). "A *significant weakness* in the proposal was defined as a flaw that appreciably increases the risk of unsuccessful contract performance." Id. (same). "Further, *weakness* was defined as a flaw in the proposal that increases the risk of unsuccessful contract performance." Id. (same).

## II. Plaintiff's Claims

Plaintiff presents four arguments for the court to consider in our evaluation of defendant's award decision. Plaintiff claims that defendant's award decision lacked a rational basis because (1) defendant's evaluations of the plaintiff's and intervenor's proposed MIS solutions were arbitrary and capricious; (2) defendant's decision not to disqualify intervenor for its staffing proposal was arbitrary and capricious; (3) defendant's price evaluation was arbitrary and capricious; and (4) defendant's determination on remand not to disqualify intervenor for "soliciting, obtaining, and using" plaintiff's proprietary information was arbitrary and capricious.

## III. Additional Protests

In September 2016, DynCorp filed a GAO protest challenging the contract award to AAR because the Solicitation "did not impose post-transition operational and maintenance responsibilities on the WASS contractor." GAO issued a decision denying the protest in December. The GAO held that the agency's "evaluations were reasonable, consistent with the solicitation, and did not reflect unequal treatment." Later in December 2016, DynCorp filed the Complaint now at issue challenging the contract award on additional bases. These protests include defendant's evaluation of intervenor's staffing proposal, defendant's price reasonableness determination, and alleged violations of the Procurement Integrity Act (PIA).

## RULING

Plaintiff asserts that instances of inconsistent communications and disparate treatment during procurement resulted in an arbitrary and capricious award decision. Defendant objects and argues that the agency supplied a coherent and reasonable explanation for the outcome in accordance with the APA standard of review. Although the lack of clarity in the overall bidding process is troubling, the contracting officer satisfied the relevant standard. Further, the contracting officer maintains the ability to select the contract awardee. Therefore, after a thorough review of the administrative record, we find that this issue favors defendant.

In addition, we have determined that intervenor's staffing proposal evaluation did not violate agency instructions prohibiting cross-referencing staffing plans in its discussion responses and otherwise was rational; its price reasonableness analysis was rational; and the CO's evaluation of the Integrity Act allegations was reasonably based on the Administrative Record as a whole and his decision in that regard was rational. Given the judicial standards to be applied in reviewing decisions of a contracting officer, the agency award decision was entirely reasonable and rational.

This case highlights the importance of presumptions that court decisions have provided in favor of government employees who serve as contracting officers. The

deference to which the CO is entitled is similar to the Business Judgment Rule as it is often applied in other areas of the law. We cannot say that such deference is inappropriate given the many billions of dollars that contracting officers manage in the form of contracts for goods and services purchased by the United States.

This case included legal arguments that could not be reconciled with each other or with the Record. The court had the benefit of excellent answers to a series of questions that we propounded to the parties for clarification, then helpful oral arguments last month. The lack of coherent and consistent explanations in some instances has resulted in uncertainties that remain.

In such circumstances, we must emphasize again the very high burdens of proof assigned to any protester in this court. One who would overturn a contracting officer's ruling that a particular bidder has made the "best value" offer to the Government must show that the CO had been "irrational or [made] critical miscalculations." *OMV Med., Inc. v. United States*, 219 F.3d 1337, 1344 (Fed. Cir. 2000). The Administrative Procedure Act states that a court must not "overturn the challenged decision unless it (1) lacked a rational basis; or (2) involved a violation of regulation or procedure." 5 U.S.C. § 706 (2006); 28 U.S.C. § 1491(b)(4); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). "The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be -- arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2006).

The Court of Appeals for the Federal Circuit added the following explanatory text from a line of cases in the DC Circuit Court of Appeals:

> [A] bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." A court evaluating a challenge on the first ground must determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009).

These statutes and court decisions provide examples of the standards that support decisions of procurement officials upon review by courts. A description of several court rulings on a central issue in this case dramatizes the context in which such cases are decided. A key issue in this case, one that first appeared to be a controlling issue for plaintiff here, is its allegations that intervenor benefited from contacts between a former employee of the incumbent contractor, DynCorp, and high-level management officers of

the intervenor. We have no doubt that the employee transmitted information to intervenor that could have helped it win the contract. However, the contracting officer found no evidence of record that the intervenor *used* the information in connection with its bid. The former employee of DynCorp, recently hired by intervenor AAR, felt comfortable transmitting this intelligence directly to senior officers for use by AAR, the intervenor. The insider also made an overture to the East Company, a recent subcontractor of DynCorp. The CO apparently found that effort too was on Ms. Hamilton's own initiative and AAR obtained no benefit from the contact.

Defendant and intervenor accuse plaintiff of misstating the standard of review for the Agency/Contracting Officer's decision on the procurement integrity review issue: "Ignoring this deferential standard and the broad discretion vested in the CO, DynCorp incorrectly claims that, if there are 'hard facts' showing 'an appearance of impropriety,' the CO must disqualify AAR, and this Court must reverse the CO if he does not."

The plaintiff's claim is not incorrect. It is the standard set out by the Federal Circuit for disqualifying a bidder. However, in the two cases it does cite, the Court did not overturn an agency's discretionary decision but, rather, upheld the agency's decision. *Compliance Corp.*, 22 Cl. Ct. 193 (1990); and *NKF Eng'g Inc.*, 805 F.2d 373 (Fed. Cir. 1986).[3]

We include the contracting officer's ruling on the alleged violations of Procurement Integrity Act this point *in extenso,* as follows:

> I have also considered whether AAR's conduct gave rise to an appearance of a PIA violation such that even though a PIA violation did not occur, AAR should be excluded because [sic] the appearance of a PIA violation. In this instance, I find that there is no such appearance and there is no basis to exclude AAR. *See, e.g., Compliance Corp. v. United States*, 22 Cl. Ct. 193, 200 (1990) ("When it appears that a bidder may have prepared its bid proposal with knowledge of its competitor's bid, such an appearance taints the integrity of the procurement process, regardless of whether any proprietary information was actually obtained or used."); *NKF Eng'g, Inc. v. United States*, 805 F.2d at 3778. There is no evidence that it appears that AAR may have prepared its bid proposal with knowledge of DI's bid and proposal information . . .

---

[3] In *Compliance* and *NKF*, however, the courts agreed with contracting officers who found "hard facts [showing] an appearance of impropriety." The CO decisions upheld by the courts were to disqualify bidders that created an appearance of impropriety.

> I find no similarities between DynCorp's and AAR's narratives for the basis of estimate of the proposed unloaded hourly labor rates. An inspection of individual rates listed, by category in the base year shows where significant differences (greater than 50%) exist. As already stated above, the comparison of each offeror's indirect rates and fee and profit rates also demonstrate these rates are very diverse. It is important to note that AAR's profit and fee rates remained constant at [REDACTED] for both of its two price proposal submissions. DynCorp's fee and profit rates remained the same with each submittal ([REDACTED]). In fact, it appears more questionable that DynCorp inexplicably reduced its final price proposal submission price by over $300M and [REDACTED] with nominal change to its final technical proposal submission to come in ~ $100M lower than AAR's bid which remained consistent with its first proposal revision submission.

Docket No. 39, #1.

Senator Dole was the floor manager of this court's jurisdictional statute when it passed in 1981. 28 U.S.C. § 1491(a)(3). In explaining the jurisdiction of the Claims Court to grant injunctive and declaratory relief, he stated that "the Government must be permitted to exercise its right to conduct business with those suppliers it selects and to do so in an expeditious manner." Cong. Rec. S14694 (daily ed. December 8, 1981). Similarly, the House Committee Report on the bill stated that it "expects that the Court will utilize the authority conferred upon it by this section only in truly extraordinary circumstances . . . ." H.R.Rep. No. 312, 97th Cong., 1st Sess. 44 (1981). Since then, courts generally have avoided becoming involved unduly in the procurement process, by enjoining the Government from awarding a contract to its chosen offeror. As this court stated in *Grimberg Co.*, "injunctive relief [is] awardable ... only in extremely limited circumstances." *U.S. v. John C. Grimberg Co., Inc.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983).

## CONCLUSION

This procurement was not a model of efficiency or of appropriate government acquisition policy. We found it difficult to review some parts of the Record and especially to reconcile what we could learn of the important facts with some of the parties' arguments. We found that some of plaintiff's criticisms were well supported by the Record and by common sense. The case would have been much more difficult to resolve without the very high, broad standards of review and presumptions that apply to judicial review of contracting officers' decisions.

Given those standards, the case could be boiled down to these findings: The government agency's decision not to disqualify AAR has a rational basis in the entire

record; and the CO found no competitive advantage gained by AAR through the efforts of Ms. Hamilton to subvert the procurement process. Either finding is dispositive of plaintiff's case. A third determination establishes a significant weakness in plaintiff's case: DynCorp's revised proposal did not address Federal IT requirements and did not address important data migration and capture issues. *See e.g.,* Docket 83, pages 10-11, Defendant's Motion for Judgment on the Administrative Record. This provides an additional reason to support the contracting officer's determination that DynCorp's proposal was deficient compared to that of AAR.

Few reviewing courts would be comfortable in all respects with the manner in which this procurement was conducted. However, the court's duty is to review actions of the Agency, and more particularly the contracting officer, for overall compliance with statutory standards and case law interpreting those standards.

This court's primary concern at the outset was the apparent violation of laws and regulations that attempt to insure that government procurements are conducted fairly. In that regard, a former employee of plaintiff DynCorp's apparently initiated a contact with intervenor AAR in an effort to transmit sensitive inside information relating to an element of AAR's bid. For whatever reason, the former employee, Ms. Hamilton, felt comfortable contacting the top corporate officers of the intervenor in this case, including its Chief Executive Officer. The information remained with management for two weeks before AAR's General Counsel notified the contracting officer of the breach.

One issue arising from this incident is whether such facts might warrant a finding of "the *appearance* of impropriety." Certainly, most observers without the benefit of case law interpreting the meaning of that phrase, "appearance of impropriety," would think that the facts described could meet the definition. Not knowing that such a finding must be supported by "hard facts," most would want to learn more about the incident. The need for "hard facts" would not seem to fit well with "appearance of impropriety," as the latter term suggests a lower standard of proof than "hard facts."

As noted earlier in this Opinion, however, we can assume that sound policy or legal reasons pertain not only to this standard but also to the high level of discretion accorded contracting officers in carrying out their procurement duties.

In any event, we reviewed the Record carefully to insure that the intervenor meets requirements of procurement law sufficient to qualify it to be the winning contractor; that the contracting officer met his responsibilities to act fairly and impartially as a quasi-judicial government official; and that plaintiff DynCorp fell short of meeting its responsibilities as described in Federal Acquisition Regulations and other procurement laws and regulations, and required by the State Department's Statement of Work and Invitation to Bid and other relevant contract documents.

We are satisfied that these detailed reviews have brought the court to the proper resolution of this case. To that end, we must **GRANT** defendant's motion and intervenor's separate motion for judgment on the Administrative Record and **DENY** plaintiff's motion for judgment on the Administrative Record, and plaintiff's amended motion for judgment on the Administrative Record. The Clerk of Court will dismiss plaintiff's Complaint. No costs.

**IT IS SO ORDERED.**

s/*Robert H. Hodges, Jr.*

Robert H. Hodges, Jr.
Senior Judge